## Joseph Thaxter vs. John Bradley & al.

Where the proprietor of a tract of land gave a bond to another to convey the same to him or his assigns within a certain time and at a stipulated price; and where the obligee made a contract with a third person to share equally with him the profits made by any sale thereof effected through his agency; and where the obligor, within the time fixed in the bond, and without the knowledge of the obligee, conveyed the land to purchasers procured by such third person, and received of them, pursuant to an arrangement made with him, a sum in addition to the price stipulated in the bond; in a bill in equity, *it was held*, that the obligor was entitled to recover of the obligee one half of the amount, above the price stipulated in the bond, received by him on such sale.

THIS was a bill in equity brought by *Joseph Thaxter* against *John Bradley* and *James Irish*. The case sufficiently appears in the opinion of the Court.

It was argued by *Mellen & Preble*, for *Thaxter*, who cited, during their argument, *Dockray* v. *Noble*, 8 *Greenl.* 278; and *Getchell* v. *Jewett*, 4 *Greenl.* 350.

By *Daveis*, for *Bradley*, who in his argument, cited *Clason* v. *Morris*, 10 *Johns. R.* 524; *Brown* v. *Haven*, 3 *Fairf.* 164; *Fairbanks* v. *Dow*, 6 *N. H. Rep.* 266; *Miller* v. *Lord*, 11 *Pick.* 11; 2 *Kent's Com.* 490.

And by *W. P. Fessenden*, for *Irish*, who cited in his argument, *Hart* v. *Ten Eyck*, 2 *Johns. Ch. R.* 62.

The opinion of the Court was drawn up and delivered at the *April* Term, 1838, by

EMERY J. — The bill alleges that *Bradley*, being seized and possessed of a certain township of land, *No.* 1, *9th Range*, on the west branch of *Penobscot River*, by his memorandum and agreement in writing, dated the 28th of *April*, " agreed with the plaintiff to sell and convey to him the township, which *Bradley* bought of *Richard Bartlett* and *Amos M. Roberts*, in *December*, 1832, containing 22,104 acres, water included, from which is reserved 3 lots of 320 acres each, to be laid out for public uses; also reserving the right to hold, occupy and maintain a boom toward the head of the lake, for securing timber, &c. and receive toll on the same,

also reserving the right to erect and occupy a building or buildings, necessary for the accommodation of those, who may repair or tend said boom, and reserving the right to cut, and use any timber hereafter, by the owners of said boom, or their agents, necessary for the boom and buildings, paying a reasonable price for the timber so cut or used. *Thaxter*, to notify *Bradley* of his intention to purchase the tract by the last day of *June* then next, and to produce one fifth part cash, and satisfactory security to said *Bradley* for the residue of the purchase, payable in equal sums, in one, two and three years, with interest annually, the price to be $4,25 per acre.

"Now if the said *Thaxter* notify said *Bradley*, and produce the money and security as aforesaid for the payment of said township, I hereby agree to give him or his assigns a warrantee deed of the same. *Portland, April* 28, 1835.

"*John Bradley.*"

And at the same time, by another agreement in writing, of the same date, the time for the purchase was further extended, from the last day of *June*, till the 1st day of *October* then next, and if *Thaxter*, within sixty days, explore the township *Bradley* would pay half the sum *Thaxter* pays toward the expense of exploring the same, in case he does not sell it, and further agreed that if he failed to sell it in sixty days, to extend the time till the 1st of *October* then next, if necessary, at the price named in the instrument, reckoning interest on it. And the plaintiff, having received those instruments, on the 11th of *May*, entered into a bargain in writing with *James Irish*, and agreed to give him one half of all the net profits arising from the sale of said township over the price of $4,25 per acre as before stated, to be paid to *Bradley*, on condition that *Irish* should go on and explore the tract, and aid in effecting a sale, having reference to those obligations of *Bradley* to plaintiff, he, *Irish*, in consideration of the premises, not to charge the plaintiff for exploring and selling, to which *Irish* agreed, and did explore it, and did aid and assist the plaintiff in effecting a sale of it, and from time to time rendered to the plaintiff an account of his doings. And on or about the 25th of *June*, the sixty days having nearly expired, and no sale or prospect of it, before the last day of *June*, or before the lapse of the sixty days, the plaintiff gave *Bradley* notice in writing, that it had become necessary for him, in order to

sell, to claim the extension to the 1st day of *October*, to which *Irish* was knowing and assenting, and having availed themselves of the extension, *Irish* went on to explore and to aid in effecting a sale according to the terms of agreement between *Irish* and plaintiff, and from time to time rendered account in writing of his doings, and *Irish*, after the last day of *June*, and prior to the first day of *October*, contracted by himself, or through the agency of one *Smith & Marsh*, to sell the township, as well for the benefit of himself as of the plaintiff, under and by virtue of said agreements of *Bradley*, *Thaxter* and *Irish*, to *Josiah Perham, Jr.* and *Samuel Strickland*, or to one, or both jointly, with others unknown to plaintiff, at the rate of five dollars the acre, amounting in the whole, to $105,720, one quarter of which, viz. $26,430 in cash, said purchasers then and there paid to said *Irish*, and received *Irish's* obligation for a deed, upon their giving him on or before the 15th of *September*, good and satisfactory security for the balance, payable as in the last named agreement, was set forth, and in case the security should not be given, the cash payment was to be forfeited to the plaintiff and said *Irish*.

It further alleges, that prior to the said 1st day of *October*, as he believes, on 10th *September*, he requested of *Bradley*, information if he was ready to comply with the conditions of his two memorandums of agreement, of 28th of *April*, 1835, upon the plaintiff's complying on his part.

*Bradley* said, he was not, unless the plaintiff would give him $4,50 per acre, for the township. Plaintiff says he was informed by *Irish*, and believes *Irish* repeatedly requested *Bradley*, before the 15th of *September*, to execute a deed agreeably to *Bradley's* contract, upon *Irish's* offering to perform the conditions of the last memorandum and agreements, which he refused, unless he could have $4,50 per acre. Plaintiff further alleges that *Irish*, in consideration that plaintiff agreed to give him half the profits on the sale of the township, over $4,25 per acre for his aid and assistance in effecting a sale, *Irish* agreed to pay the plaintiff one half of all the interest the said *Perham* and *Strickland* agreed to pay *Irish*, and half of the interest the plaintiff agreed to pay *Bradley*, as mentioned in the memorandum of the 28th of *April*, 1835, and also to pay the plaintiff all his expenses, and liabilities about the

sale of the township. And that on 17th of *September*, *Bradley* stated to *Joseph Adams*, plaintiff's counsel, that he had no wish that plaintiff should comply, or offer to comply with his part of the condition of the agreement of 28th of *April*, 1835, for it would do no good, as he, *Bradley*, had deeded the township to *Josiah Perham*, *Jr.* which deed was in the custody of *Henry Goddard;* that he, *Bradley*, had received $4,50 for it per acre and that *Irish* had given to *Bradley* a bond in penal sum of $20,000 to indemnify him against said *Bradley's* liabilities on his said obligations, and *Bradley* denies the plaintiff's right and interest, alleging they are not binding. That on the 14th of *September*, notwithstanding the plaintiff and *Irish* offered to comply with the contract of 28th of *April* frequently to said *Bradley*, and he refused to accept the performance. Yet *Irish* and *Bradley* agreed, without the plaintiff's knowledge or consent, that *Bradley* should give *Josiah Perham*, *Jr.* a deed of warranty of said township, which was done, and deposited with *Henry Goddard*, to be delivered on *Perham's* complying with certain conditions, which plaintiff believes has been done, and *Perham* paid *Bradley* and *Irish*, exclusive of interest, $105,720, out of which, there is due to plaintiff, in addition to what *Irish* agreed to pay him, on account of interest, liabilities, and disbursements, $7929, excepting therefrom $4,228,80, which *Irish* has already paid the plaintiff, and the balance, or any part of it he refuses to pay, or secure, as *Perham* has agreed to pay. Because *Bradley pretends*, that, *Irish* and plaintiff will make profit enough, at the rate of 50cts an acre upon the township, and *Irish pretends* that he should have incurred the forfeiture of large sums to *Perham* and *Strickland*, on his obligation to convey to them at $5 the acre, which obligation would have expired on 15th of *September*, to save which, he agreed that *Bradley* should retain $4,50 per acre exclusive of interest. That *Bradley*, in fraud of his agreements, as to profits, pretends that *Irish* was employed by him, and sold under him, *charges that* he did it oppressively, collusively and contrary to equity, and received 25 cents for each acre which he ought to account for to plaintiff, and asks for general relief.

*Bradley* admits the execution of the writings of agreement of 28th of *April*, but denies that there was any consideration to sustain the plaintiff's claim against him, admits his ownership in part of

the tract, and his willingness to dispose of his property in it, and was solicited by the plaintiff to allow him the privilege of disposing of it, representing that he was competent to effect a sale on the terms of the first writing, but he did not notify the defendant of his intention to purchase by the last of *June*, nor produce the money, nor security, nor explore the tract in 60 days, otherwise than through the means of *Irish*, and employing him to make a new agreement with defendant; that extension of time was not necessary to effect a sale to 1st of *October*; might have been effected before last of *June*; and the pretended notice of plaintiff to defendant, of 25th of *June*, was nugatory; and before the last of *June*, arranged with *Irish*, to effect a sale, and gave him power to transact and manage the concern, *Irish* taking all the labor, trouble, care and responsibility of the concern, without consulting the defendant; and that *Irish* on the 26th of *June* applied to defendant, informing him his obligation would expire on the last of *June*, and requesting a new agreement for $4,50 the acre for sixty days, and accepted it, by which the former agreement was abrogated, and the notice waived of 25th of *June*, and that all the trouble of exploring and selling was well done by *Irish*, under and entirely by virtue of the new obligation, and defendant made the conveyances to the purchasers. That *Irish* was satisfied, and that the plaintiff received as large a share of profit, as he could under such extension, as he now pretends to claim, and more than he could, but through the means of *Irish*, and the plaintiff solicited accommodation in regard to an amount of money due from *Irish* to *Bradley*, and from plaintiff to *Irish*, out of this concern, and arising from the settlement of their proportions of profit thereof, *Irish* did not claim the extension, and that it would have defeated the sale. That *Isaiah Warren*, was part owner with defendant, and at some time, defendant told plaintiff that *Warren* forbid his making a deed after last of *June*. That defendant took a bond of indemnity from *Irish* against plaintiff's claim. That he had asked the plaintiff, why he did not tender, that it would be unjust to avail himself of the benefits, without the burdens of *Irish's* acts, and denies all confederacy.

*James Irish* in his answer, does not deny that the two papers were made by *Bradley* on the 28th of *April*, 1835, but if material, prays that the plaintiff may be held to produce them in Court

and to establish the validity of them. That on the 11th of *May*, 1835, *Thaxter* stated to him, that he had a bond or agreement in writing, whereby *Bradley* promised to convey by deed to said *Thaxter*, the township in question, on the conditions set forth in the plaintiff's bill, and though he has no recollection that *Thaxter* exhibited to him, or stated the second paper, it is possible he might have done so, that in effect the plaintiff stated to him that he was unacquainted with the nature of land speculations, had little experience in that kind of business, had little confidence in his own ability to sell said township, which was his sole object in taking said agreement, thereby to make a profit on the same, he, the said *Thaxter*, being unable to purchase and hold the same, and the defendant was requested by the plaintiff to become interested with him in said agreements, and aid in selling the land, and the defendant entered into the agreement, as stated in the paper marked **A.** That the defendant had previously explored the township, was well acquainted with its nature and qualities, immediately started for *Bangor*, to effect the object, *Thaxter* stating his wish to sell the land at all events, before the last day of *June*, then next, when his agreement would expire, and if not sold at private sale before the 10th of *June*, to put it up at auction, the defendant to bid as high as $4,25 per acre; it was deemed unnecessary to explore again then, that at the public auction, the land was struck off to defendant, at $4,25, no one bidding higher. *Thaxter* was present, and assenting. Not effecting a sale, he returned to *Gorham*. That on or about the 26th of *June*, 1835, he was applied to at *Gorham* by *Samuel B. Smith*, and *Noah Marsh*, for a bond of the township, at $5 the acre. That he came to *Portland* to see *Thaxter*, found he was in *Boston*, that then on referring to the original agreement of said *Thaxter*, the defendant found it would expire on the last day of *June*, it being then the 26th day of said month, that it did not then occur to the defendant, that *Thaxter* had the second agreement from *Bradley*. That he applied to *Bradley* for a new agreement for the benefit of *Thaxter* and himself on the same terms. *Bradley* refused, but expressed his willingness to give the defendant an agreement to convey the township to him at the rate of $4,50 per acre, payable one quarter in cash, and the residue in three equal annual payments.

The defendant considering it his only chance to secure said township, and the benefit of a sale thereof to said *Thaxter* and himself, concluded to take an agreement from said *Bradley* to that effect.

The simple plain unsophisticated matter of this case is, that *Mr. Bradley* professed to own lands, which in the season so distinguished for the spirit of speculation, he was willing to sell. *Mr. Thaxter* was desirous to become a sort of broker to effect a sale, and the better to accomplish his object, took the two papers mentioned in the bill and answer, dated the 28th of *April,* 1835, the first warily limiting the right to the last day of *June,* then next, so that the ardor of purchasers might be excited to complete an arrangement at an early day, lest the *el dorado* should not come into their possession. The second, providing for an extension till the 1st day of *October.* *Mr. Thaxter* becoming dubious, whether without some foreign aid, he should be so successful as at first he supposed, sought the concurrent exertions of General *Irish,* offering the splendid inducement of participation in half the profits to be made beyond the $4,25 per acre, the sum to be paid to *Mr. Bradley.* General *Irish* having previously, as land agent of the State explored the tract, was admirably qualified to aid in effecting a sale. And as early as the 11th of *May,* 1835, had commenced his journey to *Bangor* to find a purchaser. It is manifest from his letter of that date, written at *Brunswick,* that he had seen the second paper, and he urges *Thaxter* to send it to *Bangor.* He also says that he meets here at *Brunswick, Bradley* that evening, but has " not let him know all our plans." What is the just construction of those two papers ? We cannot hesitate to declare that in our judgment they constituted one transaction. And that the first paper apparently so strict in its requisition, was neutralized as to the necessity of performance by the last of *June,* upon notice, proved by *Hill* and *Charles Thaxter,* to be given to *Bradley* by the plaintiff, before the last day of *June,* that the plaintiff claimed the benefit of the extension promised, and *Mr. Bradley* said, " very well; I have no objection to extending it." This as sworn by *Charles Thaxter* was on the 29th of *June.* The plaintiff had before that time, as proved by *John Hill,* between the 18th and 20th of *June,* given *Bradley* the same notice verbally.

The provision in the second paper, that *Bradley* would pay half the expense of exploring, if *Thaxter* within 60 days explored it, was only effectual in case he did not sell it. And *Bradley* further agreed, if *Thaxter* fails to sell it within sixty days, to extend the time till the first day of *October* next, if necessary, at the price named in said instrument, reckoning interest on the same. There is no pretence that *Thaxter* had effected a sale within the sixty days. On notice *Mr. Bradley* would be holden to give the extension. For it is proved by *Charles Thaxter*, and *Barstow*, that the plaintiff had entered upon the service of endeavoring to effect a sale, and incurred expenses. Here then these three gentlemen were mutually interested, understandingly, in their relative rights. *Mr. Bradley* to obtain $4,25 the acre, *Mr. Irish* and the plaintiff to increase the price as much as they could with integrity and honor, and to divide the profits, deducting *Mr. Thaxter's* expenses. Could any doubt on this subject arise, had the *bona fide* sale been effected on the 10th of *June?* If no doubt of this being the just expectation of each party, *then,* has any thing occurred in the progress of the proceedings, to justify a different conclusion as to the right of *Mr. Bradley?* We perceive nothing. He could not set up new terms till the 1st of *October.* Because, although *Mr. Thaxter* might have been holden to tender performance within that period, yet *Mr. Bradley,* before the 17th day of *September,* had disabled himself to convey. And, according to the testimony of *Joseph Adams,* declared that he could not take, if tender were made, as he had given a deed to *Perham,* and dispensed with it.

Is it then according to equity and good conscience, that the sum of twenty-five cents more per acre should be required and retained by him? The answer of *Mr. Irish* further is, that although some-thing was said by *Bradley,* at the time of the conversation relative to the second agreement given to *Thaxter,* providing for an extension of the time mentioned in the original agreement, yet the defendant is positive that said *Bradley* did not state to him, that he had been notified by *Thaxter,* that he should claim such extension, but did state, that *Thaxter* had no claims upon him, said *Bradley,* which were binding for the conveyance of said land. And the stipulation aforesaid in the writing with regard to the delivery of said agreement with said *Thaxter* to him, said *Bradley,* was not, as

this defendant then believed, inserted by said *Bradley* for his own benefit, but at the request of the defendant to make it conditional, upon the delivery of the agreement with *Thaxter*, to satisfy *Thaxter*, because the defendant was knowing to his jealous and suspicious disposition, but never intended to exclude *Thaxter*. That he went to *Boston*, saw *Thaxter*, was then informed by him, for the first time, of his having claimed an extension, and that he considered himself entitled to it, but expressed to the defendant his full and entire satisfaction with what had been done by the defendant as aforesaid, and that he was more satisfied with the defendant's agreement, with said *Bradley*, as, if he, said *Thaxter*, could not hold said *Bradley* on the agreement to convey to him at $4,25 per acre, he would give up his said agreement to this defendant, in order that said *Bradley* might be holden on the agreement given to the defendant, and that the defendant and *Thaxter* would at all events, if said land was taken under the bond so as aforesaid given by the defendant, realize the sum of fifty cents per acre, in the sale of said township.

Is the claim of *James Irish* warranted to abstract any more than a half part of the net profits made between $4,25 and $5 the acre? Are expenses of *Thaxter*, a charge on General *Irish*? In the order of time, in which the events in proof took place, we perceive that on the 11th of *May*, 1835, *Mr. Irish* had full knowledge of the rights of *Thaxter*, or at least the knowledge that *Thaxter* had the paper providing for the exploring pay, and the extension, if *Thaxter* failed to sell. After the ineffectual attempt to sell to their satisfaction on the 10th of *June*, and *Thaxter's* unsuccessful efforts at *Bangor*, afterward, General *Irish* returned to *Gorham*. And on the 26th of *June*, while *Thaxter* was at *Boston*, application was made by *Smith & Marsh*, for a bond at $5 per acre. He applies to *Bradley* for extension on the same terms of the agreement with *Thaxter*, as he says, receives a letter of that date from *Mr. Bradley*, reciting that he had given the plaintiff the writings of the 28th of *April*, and in case *Irish* returned those papers, he agreed to give *Irish* a bond to extend sixty days, at $4,50 the acre, interest from that to the time of sale.

The great error and mistake of these parties was to entertain the opinion that this was right, unless done with the full knowledge ap-

probation and agreement of the plaintiff, at least so far as to pre-judice his rights. Yet it seems that *Mr. Irish*, according to his answer, did obtain this paper, and contracted to sell to *S. B. Smith*, on his complying with the terms in 30 days. On the 4th of *July*, 1835, *Smith* notifies *Irish* of his intention to take up the bond, if he can have an extension. On the 6th of *July*, 1835, *Irish* gives a certificate of extension, 25 days. On the 10th of *July*, 1835, *Irish* from *Bangor* writes to *Thaxter*, that he is going to explore with the men he gave the bond to, and if they fail, shall leave nothing undone that is fair and honorable, to effect a sale. On the 15th of *July*, *Smith & Marsh* give a bond to *Irish* in the sum of $15,000, reciting their purchase. On the 22d of *July*, *Irish* certifies, that he considers himself bound in honor and justice to pay half the interest, which *Thaxter* may have to pay *Bradley*. And on the 29th of *July*, 1835, *Irish* gives his bond in $1,000 to *Thaxter* to pay half that interest. On the 11th of *August*, 1835, *Irish* gives his bond in $100,000 to *Smith & Marsh* to convey the land, and gives an extension, 15 days, from 1st of *September*. On the 11th of *September*, 1835, an agreement is made by *Irish* with *Thaxter*, that the cash payment already made and deposited in *Maine Bank*, of $26,430 shall be equally divided between *Irish* and *Thaxter*, and that the sale was made on a bond from *John Bradley* to *Joseph Thaxter*, which sum by condition of *Irish's* bond, will be forfeited by the purchasers of said *Irish*, should they fail to comply with the condition of it by the 16th of that month. On the 12th of *September*, *Strickland*, *Perham* and *Irish* called on *Thaxter* to aid them with *Bradley*. On the 14th day of *September*, 1835, *Irish* procured the deed from *Mr. Bradley* by new agreement. And the same day that deed and certain notes were deposited with *Henry Goddard*. General *Irish* giving his bond of that date in $20,000 to indemnify *Bradley* against *Thaxter*. The notes left with *Mr. Goddard* were for $7,929, described as arising from conveyance from *Bradley* to *Perham*, for benefit of *Irish*, to whom they belong after paying $1,987 and interest due from *Irish* to *Bradley*, when the condition of a certain obligation of said *Irish* to said *Bradley* of this date for indemnity shall be fulfilled, said *Bradley* to have a lien on said notes, the same to be retained by said *Goddard* for his

benefit for security of said note and obligation. On the 15th of *Sept.* 1835, *Mr. Irish* applied to *Thaxter* in presence of *Asaph Kendall,* and requested him to restore all of $4,228,80, which *Irish* said he had paid *Thaxter,* after retaining $1,327,50. *Irish* saying that the sum to be divided, was $10,572, cash payment, one quarter of that, was $2,643, and the half of that was $1,327, 50. *Thaxter* refused. Did not deny the truth of what *Irish* said.

These papers were left with *Goddard* for the accommodation of *Strickland* and *Perham* to obtain notes that would pass at the Banks designated.

For all just consideration between the parties before the Court, the sale was made before the first day of *October,* 1835, through the efficient service of General *Irish.*

As *Mr. Bradley* and *Mr. Irish* undertook to make a new arrangement, as *Mr. Irish* says, without *Mr. Bradley's* communicating to him, that *Thaxter* had required an extension, and it was against *Thaxter's* interest, we must consider the testimony of *Goddard* and *Adams* as evidencing circumstances very much affecting the answers of the defendants.

It is proved by the testimony of *Joseph Adams,* that to about midway between the 1st of *August* and 12th of *Sept.* 1835, he was the consulting counsel of *Thaxter* on an agreement for compensation. That his opinion in the fore part of *August,* was requested by *Thaxter,* on the two papers given to him by *Bradley,* and he gave it. Within a few days after, *Irish* came in, and the opinion was repeated to him. *Irish* wanted the opinion of other counsel, and it was agreed Judge *Preble's* should be taken. *Thaxter* returned, and reported that opinion. *Irish* then said, he thought there could be no doubt that the extension would be good and would hold *Bradley.* He requested *Thaxter* to go and consult Judge *Mellen.* It is proved by Judge *Mellen,* that *Thaxter* did consult him as to those papers, and he gave his opinion. A few days after giving it, *Bradley* overtook him in the street, and asked if he had given his opinion in favor of *Thaxter's* construction. Judge *Mellen* informed *Mr. Bradley* that he had, and stated to him the substance of that opinion.

By the testimony of said *Adams, Thaxter* said he had shown the obligation to Judge *Mellen,* and that he had given the same

opinion with the other three lawyers, that *Bradley* was bound by the extension. General *Irish* expressed himself fully satisfied, and said, " we will now fight the old scoundrel, for all he has in view, is to get 25 cents more the acre, than he agreed to sell the land for." *Irish* wished *Adams* to prevail on *Thaxter* to take 50 cents profit on the acre, and allow *Bradley* $4,50 per acre. *Irish* feeling that his situation was alarming, because his bond to *Smith & Marsh*, the purchasers, would expire the 15th of *September*, before *Bradley's* bond to *Thaxter* would expire. *Mr. Adams* told *Irish* there *was one way in which he could relieve himself from his difficulty*, if he was disposed to allow *Bradley* $4,50 per acre, and from the 50 cents profit pay *Thaxter* 37½ cents, retaining for himself, 12½ cents, which would give him a speculation in profit, of upwards of $2,500. *Irish replied with some warmth, that he would not do it, he would lose the whole first*, or in language of like import. *Mr. Adams* also testifies, that on the 16th or 17th of *September*, 1835, at the request of *Thaxter*, he called on *John Bradley*, told him that *Thaxter* wished to be informed, whether he intended to comply with the condition of his obligation, or obligations of 28th of *April*, then last, for the sale of the township, as the time limited therein, had but about a fortnight to run. And whether he wished *Thaxter* to make a regular and legal tender to him of the performance of the conditions of said obligation on his part. *Bradley* replied, that he should not take, or had not taken short of $4,50 per acre for said township, that $5,000 was profit enough for *Thaxter* to make on the sale of it. *It would do no good for Thaxter to do any thing more about it*, as the land had been sold, and the deed had been deposited with *Henry Goddard*, to be retained by him for a certain time, and upon certain conditions, and then to be delivered to the purchasers, and that he had a bond of indemnity from General *Irish*, against any claim that *Thaxter* might have against him, by reason of his bond or bonds to *Thaxter*. Produced and read it. During the interview, *Adams* endeavored to persuade *Mr. Bradley* to comply with what *Adams* considered the conditions of his obligation to *Thaxter*, but he persisted in saying that a half dollar an acre was profit enough, and especially that $5,000 was enough for *Thaxter* to make. *Adams* then asked him if *he wished or expected Thaxter* to comply with

his part of the conditions of said obligation, or to make him *any offer or tender of performance of said obligation on his, Thaxter's part.* He answered, *that he did not wish him to do it, as it could do no good, for he had deeded away the land.*

*Irish* expressed a strong desire that a tender should be made, proposed different methods, in which a tender of the notes and money might be made to *Bradley,* wished *Thaxter* to go forward himself and make a tender to *Bradley,* and demand performance, or that he should do it in company with *Irish. Thaxter's answer was, pay him or secure him his expenses, and 2s. 3d. per acre.*

*Irish* throughout, expressed great anxiety to have *Bradley* compelled to terms, according to the terms of his contract with *Thaxter.* To the question by *Irish's* counsel, Did he not make repeated offers to *Thaxter,* to do any thing in his power to bring about the result wished for by *Thaxter?* The witness answered, " Yes, he did, *excepting securing or causing Thaxter to be secured as aforesaid.*" To the question, was it in the power of *Irish,* to have done any thing effectively with *Bradley,* without *Thaxter's* cooperation or allowing him the use of *Bradley's* bonds, *Mr. Adams'* answer is, I don't know that it was, except upon these conditions. He subsequently explains, that he means to say, *Irish* uniformly said, that *Bradley* would not give a deed to the purchasers of the township, unless he could have $4,50 per acre, notwithstanding his bond to *Thaxter,* and that *Thaxter* would not give up his bond from *Bradley,* unless he could have or be secured in the sum of 2s. 3d. per acre, and his expenses paid.

*Henry Goddard* states, that General *Irish* did call upon him with an order from *Bradley,* to deliver certain papers or paper to him, and thinks the papers which were provided to be delivered by the papers left in *Goddard's* hands, and of which copies are annexed to his deposition, were by said order directed to be delivered, and he delivered the papers agreeably to said order. They were delivered the last part of *October,* or the first of *November,* 1835.

After the arrangement between *Bradley* and *Thaxter* of the 28th of *April,* 1835, *Mr. Bradley* was in a certain degree, in the light of a trustee to hold the property at $4,25 the acre, till the 1st of *October,* for the benefit of *Thaxter.**

---

* *Legard* v. *Hodges,* 1st *Ves. Jun.,* 477. An agreement between persons raises a trust.

In *Garth* v. *Cotton*, 1 *Dickens*, 201, the observation of *Lord King* is quoted. "If it is a breach of trust, and the trustee convey the estate over, a court of equity is not to sit still and let others profit by the spoil." In page 218 it is said, that *collusion between two persons to the prejudice and loss of a third*, is, in the eye of the Court, the same as a fraud. And one principal ground of the judgment in that case, was *collusion appearing upon the face of the articles set forth in the answer*. Taking the papers set forth in the answer in the present case, could we give a different character to them? We mean not to use harsh epithets.

On contrasting the proof with the answers, *we are led to the conclusion, from all the acts of the parties, that there never was an unqualified assent of Thaxter to Irish's proceedings, but only with the proviso, that Bradley could not be holden on the papers of April 28, and equity requires, that the agreement then made, should be carried into effect.*

Appearing as it does, that *Bradley* should have allowed to *Thaxter* a profit of three quarters of a dollar per acre, and that in the adjustment between *Bradley* and *Irish*, he allowed only half a dollar. As *Irish* is entitled to half of *Thaxter's* profits, to wit, 37½ cents, subject to deductions, as stipulated between them, *Irish* and *Thaxter*, which may be adjusted between them; and as *Irish* may have relinquished some part of his proportion to *Bradley*, in his settlement with him, or may be possibly some how affected by his bond to *Bradley*; we do not propose to settle that matter between *Bradley* and *Irish*.

If *Mr. Bradley* pay *Thaxter* one eighth of a dollar per acre, he obtains his share, so far as it should come from *Mr. Bradley*.

The decree then should be that said *Joseph Thaxter* recover from the said *John Bradley* one eighth of a dollar per acre, being $2,643, with interest from the time it was received by said *Bradley*, on the 14th day of *September*, 1835, and costs of this suit.

And the bill as to *James Irish* is to be dismissed without costs for either party.